IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2006

## STATE OF TENNESSEE v. KALVIN RUSH

**Appeal from the Criminal Court for Shelby County
No. 04-03607   W. Otis Higgs, Judge**

**No. W2005-02809-CCA-R3-CD  - Filed October 11, 2006**

The Appellant, Kalvin Rush, was convicted by a Shelby County jury of aggravated robbery and sentenced to eight years in the Department of Correction.  On appeal, Rush raises the single issue of sufficiency of the evidence.  After review of the record, we find the evidence sufficient to support the verdict and affirm the judgment of conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Robert Felkner (at trial); and Garland Ergüden (on appeal), Assistant Public Defenders, Memphis, Tennessee, for the Appellant, Kalvin Rush.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Crossnoe, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On January 21, 2004, around 11:30 a.m., the Appellant followed the victim, Dwayne Washington, into the boarding house where Washington resided at 1005 Rayner Street in Memphis and robbed him at gunpoint of approximately $2000 in cash.  In the days prior to the robbery, Washington had received a $2800 income tax refund check, $800 of which he used to purchase a car. He kept the remaining money in his room at the boarding house.  Washington, a cook at Jack Pirtles, had bragged to others in the neighborhood about receiving the refund.  On the day of the robbery, Washington entered the boarding house, stopping to greet the resident manager, Karen Hudson, who was in the kitchen cooking breakfast for her daughter and grandson.  Although the victim was not

aware that the Appellant was behind him, Hudson saw the Appellant follow the victim into the room. While in the kitchen, Hudson saw the Appellant point a pistol at the victim's back and heard him state "give me the money."[1]  Fearing for her safety, Hudson retreated to her room, taking her grandson with her, and locked the door.

Following the Appellant's directives, the victim admitted the Appellant into his room and showed him the money which was on top of the television.  The Appellant proceeded to take the money and left the premises, ordering the victim not to leave his room for thirty minutes.  After approximately ten to fifteen minutes, the victim left his room and went to Hudson's room to inform her that the Appellant had stolen his money.  The robbery was then reported to the police.

Upon arriving, Officer Timeca Johnson of the Memphis Police Department spoke with both the victim and Hudson, as well as a next door neighbor.  The victim and Hudson provided Johnson with a description of the Appellant, and Hudson informed the officer that the Appellant's street name was "Wayne" and that he lived on Roland Street. Johnson listed this information in her report which was forwarded to the robbery division.  Sergeant Davidson was assigned the case the following day. After verifying the information contained in the initial police report from Hudson and the victim, Davidson proceeded to Roland Street to question the Appellant.  However, he learned that the Appellant had moved to a duplex on Walker Street.  Upon arriving at the duplex, Davidson knocked on the door of the duplex located on the right.  In response, the Appellant, partially clothed, emerged from the duplex on the left.  Davidson noted that the Appellant matched the description of  the robber, and the Appellant admitted that his street name was "Wayne."  At this point, the Appellant was placed in custody; however, Davidson allowed him to reenter his duplex in order to dress.  The Appellant refused Davidson's request to search the duplex stating he "didn't want [him] to find anything that might incriminate him."  The Appellant was then transported to jail on "a forty-eight hour hold,"[2] and Davidson secured the Appellant's apartment prior to his departure, making sure that all the doors and windows were locked.

The victim positively identified the Appellant as the perpetrator of the robbery in a police photo lineup.  At this point, Davidson obtained a search warrant for the Appellant's duplex but, upon his return to the address, found that the dwelling had been burglarized and "ransacked."  No money or weapon was found during the search of the residence.  However, a jacket matching the description of the one worn by the robber was found in the duplex.  After leaving the duplex, Davidson took the

---

[1] The victim testified the Appellant told him, "Big Daddy, do not make no funny moves, show me where the money is."

[2] We know of no authority which would permit the police to book a person "into jail on a 48-hour hold," or as additionally referred to in the record as placing a person "on the hook," without preferring any criminal charges in order that the police could complete their investigation, as suggested by the testimony.

This Memphis Police Department practice has been routinely condemned as it constitutes an unlawful detention and subjects any evidence obtained during this period of detention to suppression. *See State v. Larico S. Ficklin*, No. W2000-01534-CCA-R3-CD (Tenn. Crim. App. at Jackson, Aug. 27, 2001).

photographic lineup photos and showed them to Hudson, who also identified the Appellant as the perpetrator. At this point, the Appellant was arrested and charged with aggravated robbery.

On May 20, 2004, a Shelby County grand jury returned a one-count indictment against the Appellant charging him with aggravated robbery. At trial, the Appellant chose not to testify and presented no proof in his defense. At the conclusion of the proof, the Appellant was convicted as indicted. Following an October 11, 2005 sentencing hearing, the trial court sentenced the Appellant to serve eight years in the Department of Correction. The Appellant's subsequent motion for new trial was denied, with this appeal following.

## Analysis

On appeal, the Appellant raises the single issue of sufficiency of the evidence, asserting that "the State failed to carry its burden of proving that he is guilty beyond a reasonable doubt of the crime charged, and that, when tested against the standard enunciated in Rule 13(e), Tennessee Rules of Appellate Procedure, and *Jackson v. Virginia*, 443 U.S. 307 (1979), the evidence is insufficient to support his conviction." Specifically, he argues that his conviction "rest[s] solely upon the identifications by Ms. Hudson and Dwayne Washington," that "[a]lthough police found [the] Appellant within hours of the alleged robbery, neither gun nor money was found in his possession, and he was not wearing the clothing described by Washington" when police located him.

We apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are resolved solely by the jury. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contain evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime. The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given to the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*,

493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Appellant, though admitting that there is proof in the record to support the conviction for aggravated robbery, argues that said proof is not sufficient when properly viewed against the high standard enunciated in *Jackson v. Virginia*. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2003). Pursuant to Tennessee Code Annotated section 39-13-402(a)(1) (2003), aggravated robbery, as relevant in this case, is robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" A deadly weapon is defined as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(a)(5)(B) (2003).

Essentially, the Appellant's argument is based upon his contention that the State's witnesses were not credible. He asserts that Hudson's testimony was "riddled with oddities and inconsistencies" and that the victim admitted to lying on his tax return and to driving a car with no license or insurance. This argument is misplaced as the credibility of witnesses and reconciliation of conflicts in the testimony are matters "entrusted exclusively to the jury as the triers of facts." *State v. Oody*, 83 S.W.2d 554, 558 (Tenn. Crim. App. 1991). In this case, the inconsistencies of Hudson's testimony, as well as the victim's misdeeds, were placed before the jury. The jury obviously chose to accredit these two prosecution witnesses' testimony as evidenced by their finding of guilt. It is not within our province to reweigh or reevaluate the evidence presented. *Cabbage*, 571 S.W.2d at 835.

In the light most favorable to the State, the proof at trial overwhelmingly supports the jury's verdict. The evidence established that the Appellant entered the boarding house where the victim resided and ordered the victim, at gunpoint, to give him money. After the victim informed the Appellant where the proceeds of his income tax refund check were located, the Appellant took approximately $2000 from the victim and fled. Both the victim and Karen Hudson positively identified the Appellant, both in photographic lineups and at trial, as the perpetrator of the aggravated robbery. *See State v. Strickland*, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993) (the testimony of a victim is sufficient to support a conviction). Moreover, Karen Hudson identified the robber by the street name "Wayne," and the Appellant admitted his street name is "Wayne." Additionally, a jacket matching the description of the one worn by the perpetrator was found inside the Appellant's residence. Accordingly, we conclude that the evidence is more than sufficient to support the Appellant's conviction for aggravated robbery.

## CONCLUSION

Based upon the foregoing, the Appellant's conviction for aggravated robbery is affirmed.

_____
DAVID G. HAYES, JUDGE